BATES et al. v. FIRST STATE BANK IN CALDWELL et al.

No. 10384.

Court of Civil Appeals of Texas. Galveston.

April 9, 1937.

Rehearing Denied May 13, 1937.

White, Taylor & Gardner, of Austin, for appellant C. H. Barnett.

White, Taylor & Gardner, of Austin, for appellant Eugene Bates.

Bowers & Bowers, of Caldwell, Claude Wild and Gaynor Kendall, both of Austin, for appellees.

CODY, Justice.

Appellant Eugene Bates, plaintiff in the court below, was tax assessor of Burleson county during the year 1934. On March 20th of that year he borrowed from the appellee First State Bank in Caldwell $500, giving appellee his promissory note due October 20, 1934. When giving the bank the note, he wrote the comptroller of public accounts of Texas: "I would ask that you make my voucher for the assessing of State taxes for 1934 in Burleson County, payable jointly to me and First State Bank in Caldwell, Texas, as they have made me a loan in connection with said voucher."

Also, on the same day, he wrote the tax collector of Burleson county to make the check that would be drawn to cover the voucher or state warrant for assessing state taxes for 1934, payable jointly to him and the bank, giving as the reason that the bank had made him a loan in connection with such voucher. Subsequently the bank made him six other loans, for which he gave his promissory notes, varying from $250 to $40 totalling the principal sum of $1,290, under facts which warranted the court finding the same arrangement applied to them as applied to $500 note.

On the date specified therein the comptroller forwarded to appellee bank such voucher, which read:

"No. 254                                    $1514.10
     "Comptroller's Office
         "Austin, Texas.
                    "Dec. 5, 1934.
"To J. A. Fuchs, Tax Collector of Burleson County:
"Pay to the order of Eugene Bates the sum of Fifteen Hundred Fourteen & No/100 Dollars, to be paid out of taxes collected for the year 1934, as follows: State Ad Valorem Taxes, $1189.90, State Poll Taxes, $324.20, same being for Assessing Tax 1934, and on return of this Draft, *endorsed* by him, the amount will be placed to your credit on the books of this office, and not otherwise.
                    "Geo. H. Sheppard,
                        "Comptroller."

The evidence discloses—and this seems not to be disputed—that on February 1, 1934 which was more than forty days before Bates had arranged to secure the bank with the state warrant, he appointed as his deputy appellant C. H. Barnett; and agreed to pay him $100 a month, which payment to Barnett was to be made out of the selfsame warrant that Bates was to receive for assessing state taxes for 1934. Under this appointment, Barnett served for ten months, and had received but $50 of his compensation, so that there was still due him $950.

When the bank received the comptroller's voucher or draft on December 6, 1934, drawn on the tax collector, payable to Bates, they called on him to indorse it, which he refused to do. Instead, Bates called on the bank to surrender it to him, which the bank refused to do. Incidentally, the bank was the county depository; and, as such, held the fund on which the draft was drawn. The tax collector, not unnaturally, refused to pay either the bank or Bates, except the draft was surrendered to him, properly indorsed by Bates.

Bates then filed suit against the bank and the tax collector, and Barnett intervened. The pleadings of the parties, other than of the tax collector, are lengthy. To give even their substance in detail would take too much space. It is enough to say that Bates sought to recover possession of the state warrant and receive payment of the sum it called for; he also pleaded that $950 out of the warrant was due to Barnett for salary as deputy assessor. The bank, by cross-action, sought judgment on the notes Bates owed it, and claimed a lien or the equivalent on the warrant to secure their payment. Barnett claimed a right to be paid out of the funds represented by the warrant.

At the trial, the court gave judgment against Bates on his action; and found as a fact that the state warrant (draft No. 254) for $1,514.10 was in the possession of the bank under an assignment from Bates to it, and that, to the extent of $1,509.42, with interests and costs, had been delivered (i. e., so much of the proceeds of the state warrant) to it, as of December 5, 1934; the court further gave judgment to it, the bank, against Bates in the sum of $1,509.42 as the amount due on the notes together with interest on them from the date of judgment; the court, in its judgment, ordered the tax collector to pay over to the bank

786

out of draft No. 254 the sum of $1,509.42, with interest, and all costs of suit, and the balance, if any, to intervener Barnett; the court further found that Bates owed Barnett $950, with interest at the rate of 6 per cent. per annum from January 1, 1935, and that Bates had given Barnett an assignment of the fees due him from the state as tax assessor, but that this assignment was inferior to the assignment given the bank, and entitled Barnett to receive only what remained after the bank's debt had been satisfied. From this judgment plaintiff Bates and intervener Barnett have appealed.

■ We are of the opinion that the judgment of the trial court, so far as it found the right of Barnett to have the proceeds of the state warrant applied to the satisfaction of the compensation due him for his services as deputy assessor *inferior* to the right of the bank to have them applied to the satisfaction of Bates's debt due it, is erroneous. Article 3902, R.S.1925, as amended by Acts 1933, c. 220, § 3, as in force in 1934, provided: "The Commissioners' Court in each order granting authority to appoint deputies * * * shall state * * * the amount of the compensation to be allowed each deputy * * * which compensation shall be paid out of the fees of the office to which such deputy * * * may be appointed and assigned."

■ This clearly expressed the will of the Legislature to appropriate the fees of office to the payment of a deputy's compensation for services rendered in such office. Indeed, such an appropriation of fees so coincides with sound public policy and principles of natural justice that, before a court would uphold in any public official the power to appropriate to the payment of his own debts the compensation due his deputy for his official services, the purpose of the Legislature to confer such power would have to be shown, and very clearly too. While it is true that, in addition to the fees of office represented by the state warrant for $1,514.10, Bates drew from the county $1,250 for services of his office in connection with assessing county, as distinguished from state, taxes, there was no obligation on the part of his deputy, so far as we are advised, that required his deputy to have these fees, rather than those coming from the state, applied to his compensation. True, the more natural arrangement for him would have been to have arranged with the commissioners'

court to make him monthly advancements against the fees of office coming from the county. But failure on his part to do this was certainly no waiver of his right to have his compensation out of any funds appropriated or appropriate for such payment. Certainly such failure would not subordinate his rights to receive his compensation to any rights of Bates's creditors to the fund from which his compensation must, by law, be drawn. In addition to his statutory right to be paid out of any fund available, whether out of the $1,250 fund or out of fees represented by the state warrant, he had a contract right (acquired some forty days before Bates and the bank made their arrangement for Bates's notes to be paid out of such fund) to payment out of fees represented by the state warrant. The bank could acquire no greater right to these fees of office, from which Bates's deputy's compensation was to be paid, than it was in the power of Bates to give. In brief, Bates could not secure the payment of his indebtedness to the bank out of the fees of office, theretofore appropriated to the payment of his deputy by his, Bates' express agreement, no less than by law. A just public policy will not allow it.

■ Bates insists strenuously that public policy made his arrangement with the bank wholly void. It is true that public policy forbids the taking of an assignment or pledge of the unearned salary or fees of a public officer; and such a transaction is void. National Bank v. Fink, 86 Tex. 303, 24 S.W. 256, 40 Am.St.Rep. 833; Hare v. Bank (Tex.Civ.App.) 272 S.W. 261; 5 Tex. Jur. 15. But it does not follow that, because Bates' state warrant for fees of office for 1934 was not issued until December 5, 1934, no part of such fees had been earned before that date. On the contrary, a just rule is prescribed by article 3898, R.S.1925 (as amended by Acts 1935, 2d Called Sess., c. 465, § 10 [Vernon's Ann.Civ.St. art. 3898]) which reads in part: "whenever such officer serves for a fractional part of the fiscal year, he shall * * * make final settlement for such part of the year as he serves *and shall be entitled to such proportionate part of his compensation as the time for his service bears to the entire year."*

On this basis—and the italicized portion of the statute just quoted embodies the almost universal yardstick for the apportionment of compensation—Bates earned practically one-twelfth of his compensation for

1934, each month. Under the arrangement he had with the bank, he gave it seven promissory notes in all.

The following tabulation is self-explanatory. Amount of fees earned from

 . The bank, having been adjudged, on June 3, 1935, the sum of $950 which should have been decreed to Barnett, ought to pay him interest on that sum from such date. The judgment of the trial court is reversed

| | | | | |
|---|---|---|---|---|
| 1/ 1/34 to 3/20/34 (date of 1st note, which was for $500.00) ............ | $327.78 |
| 3/20/34 " 4/ 6/34 ( " " 2nd note, " " " 150.00) ............ | 70.54 |
| 4/ 6/34 " 5/11/34 ( " " 3rd note, " " " 100.00) ............ | 145.22 |
| 5/11/34 " 6/19/34 ( " " 4th note, " " " 250.00) ............ | 161.82 |
| 6/19/34 " 7/16/34 ( " " 5th note, " " " 150.00) ............ | 112.02 |
| 7/16/34 " 8/20/34 ( " " 6th note, " " " 100.00) ............ | 145.22 |
| 8/20/34 " 9/21/34 ( " " 7th note, " " " 40.00) ............ | 132.77 |
| 9/21/34 to 2/31/34—(fees earned after date of last note) .................. | 418.72 |
| (Amount of State Warrant) ...... | $1514.10 |

It thus appears that there was available (except for the right of Barnett to be paid $950) to Bates, prior to the date of his last note, to assign or pledge, the sum of $1,-095.32, of earned fees, out of his compensation for assessing state taxes for 1934. There is sufficient evidence to support the trial court's conclusion that the arrangement between Bates and the bank was an appropriation of so much of his state fees as were available for that purpose, as security for the payment of his notes to the bank. Justice and good conscience required that the fees, earned after the date of the last note, be applied to the payment of the $950, so as to leave as much of the earned fees as possible to be applied to payment of the bank's notes.

We rule that the arrangement between Bates and the bank was a valid appropriation of his earned, available fees, to secure the payment of each note he gave the bank. We think it makes no difference in the result, under the facts of this case, if this arrangement be construed as an assignment of, or lien on, his available, earned fees of office, or if it be construed as a promise to pay such note out of such fees. The reason for drawing the distinction between an assignment of an interest in a particular fund, and a promise to make payment out of a particular fund, is that ordinarily it remains in the power of a mere promisor to divert the fund to other purposes, and so to break his promise. But here the bank was the county depository, and held the fund out of which payment was to be made, and arranged to get possession of, and did get possession of, the draft—so that the promisor could not divert the particular fund, so far as it existed, from that payment to which it had been, by such promise, dedicated.

and rendered in so far as it failed to award Barnett payment, out of the $1,514.10, of the sum of $950 due him, but in all other respects affirmed.

Affirmed in part.

Reversed and rendered in part.